| | |
|---|---|
| In Re: Kineshia T. Jamison,<br><br>　　　　　Debtor. | **Case No.:**　　14-24880 -ABA<br>**Adv. No.:**　　15-01198 -ABA　Order Filed on 9/18/2015<br>　　　　　　　　　　　　　　　by Clerk U.S.<br>**Chapter:**　　　7　　　　　　Bankruptcy Court<br>　　　　　　　　　　　　　　　District of New Jersey |
| Andrew R. Vara, Acting United States Trustee,<br>Plaintiff,<br><br>v.<br><br>Tyrone Gillis, Defendant. | **Judge:**　　　Hon. Andrew B. Altenburg Jr. |

| | |
|---|---|
| In Re: Ebony Bogan,<br><br>　　　　　Debtor. | **Case No.:**　　14-13948-ABA<br>**Adv. No.:**　　14-01943-ABA<br>**Chapter:**　　　7 |
| Ebony Bogan, Plaintiff,<br><br>v.<br><br>Tyrone Gillis, Defendant. | **Judge:**　　　Hon. Andrew B. Altenburg Jr. |

| | |
|---|---|
| In Re: Ronnie Hill,<br><br>　　　　　Debtor. | **Case No.:**　　14-19863-ABA<br>**Adv. No.:**　　15-01338 -ABA<br>**Chapter:**　　　7 |
| Ronnie Hill, Plaintiff,<br><br>v.<br><br>Tyrone Gillis, Defendant. | **Judge:**　　　Hon. Andrew B. Altenburg Jr. |

## <u>MEMORANDUM DECISION</u>

**DATED: September 18, 2015**

Honorable Andrew B. Altenburg, Jr.
United States Bankruptcy Court

## I.      INTRODUCTION

This matter is before the court by way of three adversary proceedings seeking to enjoin bankruptcy petition preparer Tyrone Gillis (the "Defendant") from acting as a bankruptcy petition preparer and seeking other fines and financial penalties for various violations of section 110 of the Bankruptcy Code. "Section 110 was intended to protect consumers from abuses by non-lawyer bankruptcy petition preparers." *Staiano v. File Aid of New Jersey et al. (In re Bradshaw)*, 233 B.R. 315, 325 (Bankr. D.N.J. 1999). The court concludes that the Defendant should be permanently enjoined from serving as a bankruptcy petition preparer because the Defendant has engaged in repeated and flagrant violations of section 110, including indulging in fraudulent and deceptive conduct, while preying on a poor and unsophisticated population of debtors, and because that his past behavior, failure to comply with previous court orders, his failure to participate in the adversary proceedings and his continued abuses despite the pending adversary proceedings indicate that a permanent injunction is warranted. The court also awards various fines and penalties in accordance with section 110.

## II.      JURISDICTION AND VENUE

These matters before the court are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), and the court has jurisdiction pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012, referring all bankruptcy cases to the bankruptcy court. The following constitutes this court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## III.      PROCEDURAL HISTORIES

The first matter before the court is an adversary proceeding which was filed by the Office of the United States Trustee on February 17, 2015 in connection with Debtor Kineshia T. Jamison's bankruptcy case (the "Vara Proceeding"). The complaint in the Vara Proceeding alleges that the Defendant engaged in various acts of misconduct in connection with four bankruptcies filed within this jurisdiction. It consists of the following five counts:

1.  Permanent Injunctive Relief Under 11 U.S.C. § 110(j)(2)(B) for Continually Engaging in Conduct in Violation of 11 U.S.C. § 110;
2.  Failure to Comply With the Requirements of 11 U.S.C. § 110(b)(1);
3.  Failure to Comply With the Requirements of 11 U.S.C. § 110(c)(1);
4.  Failure to Comply With the Requirements of 11 U.S.C. § 110(e)(2);
5.  Failure to Comply With the Requirements of 11 U.S.C. § 110(h)(3)(A)(i) and § 110 (i)(1).[1]

---

[1] The Office of the United States Trustee also requested monetary relief under section 110(*l*) in connection with the underlying violations alleged in Counts Two, Three, and Four of the Vara Proceeding. *See* Doc. No. 1 in the Vara Proceeding.

The second matter before the court is an adversary proceeding which was filed on October 28, 2014 in connection with Debtor Ebony M. Bogan's bankruptcy case (the "Bogan Proceeding"). The Bogan Proceeding contains allegations against the Defendant consisting of the following six counts:

1. Failure of the Bankruptcy Petition Preparer to Comply with the Disclosure Requirements of 11 U.S.C. § 110(b);
2. Failure to Comply with the Requirements of 11 U.S.C. § 110(d);
3. Failure to Comply with the Requirements of 11 U.S.C. § 110 (e);[2]
4. Violation of 11 U.S.C. § 110(*l*)(2);
5. Violation of 11 U.S.C. § 110(g);
6. Injunctive Relief under 11 U.S.C. § 110(j)(2)(B).[3]

The third matter before the court is an adversary proceeding which was filed on April 7, 2015 in connection with Debtor Ronnie Hill's bankruptcy case (the "Hill Proceeding"). The Hill Proceeding contains the following three counts:

1. Failure of the Bankruptcy Petition Preparer to Comply with the Disclosure Requirements of 11 U.S.C. § 110(b);
2. Failure to Comply with the Requirements of 11 U.S.C. § 110(e);[4]
3. Injunctive Relief under 11 U.S.C. § 110(j)(2)(B).[5]

As detailed above, the Bogan Proceeding, the Vara Proceeding, and the Hill Proceeding (each a "Proceeding" and collectively the "Proceedings") all seek to enjoin the Defendant from serving as a bankruptcy petition preparer.

The court entered a default against the Defendant on December 17, 2014 in the Bogan Proceeding, on March 27, 2015 in the Vara Proceeding, and on May 11, 2015 in the Hill Proceeding pursuant to Federal Rule of Civil Procedure 55(a), as applicable to bankruptcy cases

---

[2] It is clear from reading the Bogan complaint and post-trial brief that the petitioner in Bogan is seeking relief under section 110(e)(2) and not section 110(e)(1). *See* Doc. Nos. 1, 18 in the Bogan Proceeding. Accordingly, the court will address this count as though it were pled with regard to section 110(e)(2) specifically.

[3] The petitioner in the Bogan Proceeding also requested monetary relief under section 110(h)(3)(B) and (C) in connection with the underlying violations alleged in Counts One, Two, Three, and Five of the Bogan Proceeding and under section 110(*l*) in connection with the underlying violations alleged in Counts Two, Three, and Five of the Bogan Proceeding. *See* Doc. No. 1 in the Bogan Proceeding.

[4] It is clear from reading the Hill complaint and post-trial brief that the petitioner in the Hill proceeding is seeking relief under section 110(e)(2) and not section 110(e)(1). Doc. Nos. 1 and 18 in the Hill Proceeding. Accordingly, the court will address this count as though it were pled with regard to section 110(e)(2) specifically.

[5] The petitioner in the Hill Proceeding also requested monetary relief under section 110(h)(3)(B) and (C) in connection with the underlying violations alleged in Counts One and Two of the Hill Proceeding and under section 110(*l*) in connection with the underlying violations alleged in Count Two of the Hill Proceeding. *See* Doc. No. 1 in the Hill Proceeding.

via Federal Rule of Bankruptcy Proceeding 7055. In light of the fact that the Defendant did not respond to any of the complaints, the fact that the moving parties requested injunctive relief, and the fact that the moving parties indicated that a proof hearing might be appropriate, the court elected to hold a proof hearing to determine whether the movants established their respective *prima facie* cases and, if so, the appropriate relief to be issued against the Defendant.[6]

A single proof hearing was held in all three Proceedings on May 28, 2015 at which time Nicholas S. Herron, Esquire, attorney for Ms. Bogan and Mr. Hill, and Mitchell Hausman, Esquire, of the Office of the United States Trustee, appeared to prosecute their complaints. Mr. Herron brought with him Ms. Bogan and Mr. Hill, both of whom testified at the hearing. Mr. Hausman brought with him Donna L. Wenzel, Esquire, Staff Attorney to Isabel Balboa, the Chapter 13 Standing Trustee in the Camden Vicinage, who also testified at the hearing. The Defendant did not appear at the May 28, 2015 hearing.

At the conclusion of the May 28, 2015 hearing, the court gave the parties the opportunity to file further documents to highlight the sanctions they sought to apply under each count of each complaint and to highlight those facts they felt deserved most weight in the court analysis of the merits of the Proceedings. The parties subsequently filed final submissions for the court's consideration.

At the May 28, 2015 proof hearing, the court orally ruled that it would jointly administer the proof hearing for the Proceedings. *See* Fed. R. Civ. P. 42, applicable herein through Fed. R. Bankr. P. 7042. Similarly, this opinion will represent a single, consolidated opinion applicable in all three Proceedings. However, for purposes of entry of a default judgment, the Proceedings remain separate Proceedings each seeking specific forms of relief. *See* Fed. R. Civ. P. 55; Fed. R. Bankr. P. 7055. Any default judgment entered in connection with these Proceedings will be limited to the allegations alleged in the relevant initiating complaint. Fed. R. Civ. P. 54, applicable herein through Fed. R. Bankr. P. 7054.

---

[6]While the dockets in the Bogan and the Hill Proceedings do not contain any requests stylized as requests for the entry of default judgment, and while the Vara Proceeding did not contain a request stylized as a request for the entry of default judgment until after the proof hearing was held, Doc. No. 17, the court considers the "function" of the motions before it rather than the "captions" in administering its docket. *Smith v. Evans*, 853 F.2d 155, 158 (3d Cir. 1988) (stating that the "function of [a] motion, not the caption, dictates which Rule applies . . .").

In the Proceedings before us, this court construes the January 13, 2015 letter from Mr. Herron with its reference to Federal Rule of Civil Procedure 55(b) on entries of default judgment as a request for the same in conjunction with the Bogan Proceeding, Doc. No. 8, ("At this point we seek to learn from the Court whether a proof hearing would be required to substantiate the relief being sought in this adversary proceeding or if affidavits with a form of order would be sufficient pursuant to Fed. R. Civ. P. 55(b)."); similarly, it construes the April 7, 2015 letter from the Office of the United States Trustee as a request for the entry of a default judgment in connection with the Vara Proceeding. Doc. No. 7. In response to those letters, the court scheduled proof hearings in the Bogan and Vara Proceedings. Doc. No. 9 in the Bogan Proceeding, Doc. No. 8 in the Vara Proceeding. When the court entered a default in the Hill Proceeding on May 11, 2015 it similarly set the matter up for a proof hearing since the parties had previously determined that the three Proceedings would be administered in lockstep and that all three Proceedings would require proof hearings in order to enter default judgment. Doc. No. 11 in the Hill Proceeding. The court has thus considered the substance of the letters and motions before it over their form and determined that requests for default judgment were *de facto* made in each Proceeding.

As a preliminary matter, the court would like to address some concerns about service which were raised on the eve of the proof hearing. As the court stated on the record on May 28, 2015, in spite of the fact that the Defendant may have recently moved or changed his address just prior to the proof hearing, an abundance of documents filed by the Defendant indicate that his address is 16 Clarke Road, Bridgeton, New Jersey 08302 and the parties presented proof that the Defendant signed for documents relating to these Proceedings at that address on several occasions.[7] Furthermore, upon its own investigation, the court has discovered that as of September 14, 2015, the Defendant was still filing documents with this court listing his address as 16 Clarke Road, Bridgeton, New Jersey 08302.[8] These facts allow the court to confidently state that the Defendant received notice of the three complaints, the three entries of default, the proof hearing scheduled for May 28, 2015, and all adjournments of previously scheduled proof hearings, as well as has had ample and appropriate opportunity to respond to same.[9]

## IV.   FINDINGS OF FACT

### A.  Ebony M. Bogan

Ebony Bogan filed a *pro se* chapter 7 bankruptcy petition on March 4, 2014 on which the Defendant certified under penalty of perjury that he served as her bankruptcy petition preparer. Doc. No. 1 in Case No. 14-13948 at 3, 49. After encountering difficulties complying with the requirements of the bankruptcy court, Ms. Bogan retained Mr. Herron to assist her with her bankruptcy.

Ms. Bogan appeared at the May 28, 2015 hearing where she testified that at the time she employed the Defendant she believed that he was a paralegal and that he was permitted to give her legal advice; she also testified that the Defendant never explained that he was not an attorney or that he was not allowed to give her legal advice. She repeatedly stated that the Defendant did not explain to her the significance of the numerous documents she was signing, that she signed blank, tabbed copies of the documents before the Defendant completed them, that she asked the Defendant for copies of the documents she signed but he did not provide them for over a week, and that since she signed the papers while they were blank she did not have an opportunity to review the documents in their completed form before he filed them with the court. More specifically, Ms. Bogan testified:

---

[7] The court notes that on a handful of occasions the Defendant was served at 16 Clark Road instead of 16 Clarke Road but there does not appear to be a Clark Road in Bridgeton, New Jersey and as such the court does not believe that such a minor spelling error would have resulted in defects in service. Furthermore, given the extensive service the Defendant received in connection with these Proceedings, including numerous notices from this court and from other parties where his address was properly spelled, the court is not concerned that the Defendant has been denied proper notice of the Proceedings.

[8] *See, e.g.*, Doc. No. 1 in Case No. 15-27283 at 3.

[9] See **APPENDIX A - SERVICE ON DEFENDANT** for a more detailed explanation of the court's appraisal that notice of the May 28, 2015 proof hearing as well as of the complaints and entries of default in each of the Proceedings were properly served on the Defendant.

1.    that the Defendant completed her petition without her input;

2.    that the Defendant filed Ms. Bogan's bankruptcy petition with the bankruptcy court on her behalf;

3.    that the Defendant told Ms. Bogan he would attend her 341 meeting of creditors with her;

4.    that the Defendant collected $300 cash from her, that she did not collect a receipt for that payment, that $100 of the total amount was meant to be for the Defendant, and that the other $200 was meant to pay her filing fee;

5.    that in spite of the $200 fee the Defendant listed on Ms. Bogan's Disclosure of Compensation of Bankruptcy Petition Preparer B280 (Form 280), P-2[10] at 1, Ms. Bogan had agreed to pay the Defendant only $100 for his services;

6.    that despite the fact that Ms. Bogan did not advise the Defendant of how much money she had in her bank account at the time of her filing, and despite the fact that the Defendant never inquired about the same, the Defendant selected an (incorrect) amount to list on the her petition, an action which was consistent with the fact that the Defendant simply "took care" of filing out the petition on his own, *see* P-4 at 1, P-5 at 3, P-6 at 1;

7.    that the Defendant selected Ms. Bogan's exemptions without her input, that he did not explain them to her, and that Ms. Bogan did not see the exemptions until after the fact because she signed her petition before the Defendant completed it, P-7 at 1;

8.    that the Defendant did not explain the contents of the Statement of Financial Affairs to Ms. Bogan and Ms. Bogan provided no information to assist the Defendant in completing it;

9.    that Ms. Bogan made no decisions with regard to reaffirming a debt and that the Defendant completed the Chapter 7 Individual Debtor's Statement of Intention B 8 (Official Form 8) for her but did not explain the document to her, P-10;

10.    that the Defendant did not explain the Notice of Consumer Debtor(s) Under §342(b) of the Bankruptcy Code FB 201 A (Form 201A) to her, P-11; and

11.    that the Defendant did not provide Ms. Bogan with a copy of the Declaration and Signature of Non-Attorney Bankruptcy Petition Preparer B19 (Official Form 19) or the Notice to Debtor by Non-Attorney Bankruptcy Petition Preparer B19 (Official Form 19), nor did he review same with her or explain them to her, P-12, P-13.

Ms. Bogan's testimony highlighted several discrepancies regarding the Defendant's compensation. As stated above, Ms. Bogan alleged that she gave the Defendant $300 cash of which $100 was meant to be for the Defendant and $200 was meant to pay her filing fee. On the Disclosure of Compensation of Bankruptcy Petition Preparer B280 (Form 280), the Defendant disclosed that "[f]or document preparation services, [he had] agreed to accept" $200. P-2 at 1. Similarly, Ms. Bogan's application to waive the filing fee, which was signed by Ms. Bogan and not by the Defendant and which Ms. Bogan alleges the Defendant prepared on her behalf and

---

[10] All references beginning with the letter "P" in the Bogan and Hill Proceedings refer to trial exhibits entered in connection with those Proceedings.

without her input, documents a $200 payment to a "bankruptcy petition preparer, paralegal, or typing service." P-4 at 3. The Defendant's name, address, and signature do not appear on that document. *Id.* Lastly, Ms. Bogan's Statement of Financial Affairs, which was signed by the Defendant, does not list any sum paid to the Defendant in response to question 9 addressing "[p]ayments related to debt counseling or bankruptcy." P-9 at 5, 11.

## B.  Kenisha T. Jamison

The Vara Proceeding is before this court by way of an adversary proceeding brought within Kenisha T. Jamison's bankruptcy case. Case No. 14-24880. Ms. Jamison filed a *pro se* chapter 7 bankruptcy petition on July 21, 2014 on which the Defendant certified under penalty of perjury that he served as her bankruptcy petition preparer. Doc. No. 1 in Case No. 14-24880 at 3, 41. The case was dismissed on September 3, 2014 for failure to pay filing fees and subsequently reopened. Doc. Nos. 20, 28. At a November 3, 2014 hearing on Ms. Jamison's motion to reopen her case, Ms. Jamison appeared in court and testified about her experience with the Defendant. Ms. Jamison testified:

1.  that the Defendant told her that he used to be an attorney and that he therefore knew how to file paperwork with the court, Jamison Transcript, UST-B[11] at 9, lines, 7-10;

2.  that the Defendant charged Ms. Jamison $250 for filing documents with the court, *id.* at 9, lines 11-25 and 10, lines 1-4;

3.  that the Defendant prepared her motion to reopen her case with information she provided but without any other input from her, *id.* at 4, lines 3-15; *id.* at 6, lines 6-11; *id.* at 7, lines 12-21; *id.* at 9, lines 3-6;

4.  that she did not review the motion to reopen before she signed it, *id.* at 4, lines 16-17; and

5.  that the Defendant served the documents related to her motion to reopen on her behalf, prepared the certificate of service, and filed the certificate of service with the court, *id.* at 8, lines 6-25.

A review of Ms. Jamison's motion to reopen reveals that the Defendant did not identify himself, sign the document, or provide his name, address, or social security number on the motion to reopen or the related certificate of service. Doc. No. 24 in Case No. 14-24880.

As with Ms. Bogan's case, there are discrepancies regarding the fees paid in Ms. Jamison's case. As stated above, at the November 3, 2014 hearing, Ms. Jamison alleged that she paid the Defendant $250 to prepare her bankruptcy petition. Jamison Transcript, UST-B at 9, lines 11-25 and 10, lines 1-4. On the Disclosure of Compensation of Bankruptcy Petition Preparer B280 (Form 280), the Defendant disclosed that "[f]or document preparation services, [he had] agreed to accept" $100. Doc. No. 1 in Case No. 14-24880 at 41. However, Ms. Jamison's Statement of Financial Affairs, which was also signed by the Defendant, does not list

---

[11] All references beginning with the letters "UST" in the Jamison Proceeding refer to trial exhibits entered in connection with that Proceeding.

any payment to the Defendant in response to question 9 inquiring about "[p]ayments related to debt counseling or bankruptcy." Doc. No. 1 in Case No. 14-24880 at 32, 40.

The court would also like to note for the record that Ms. Jamison has previously filed bankruptcy cases with this court including Case No. 13-30269 in which the Defendant was listed as Ms. Jamison's bankruptcy preparer. Case No. 13-30269 was dismissed without a discharge on June 27, 2014 for failure to file or provide certain documents, failure to make payments to the Chapter 13 Trustee, failure to attend a confirmation hearing, and lack of prosecution. Doc. No. 59 in Case No. 13-30269.

## C. Quincy L. Griffin

The second case described in the Vara Proceeding is that of Quincy M. Griffin who filed a *pro se* chapter 13 bankruptcy petition on September 24, 2014 on which the Defendant certified under penalty of perjury that he served as Mr. Griffin's bankruptcy petition preparer. Doc. No. 38 in Case No. 14-29500 at 3, 20. Mr. Griffin filed a bare bones petition and his case was dismissed on October 15, 2014 for failure to file missing documents. Doc. Nos. 1, 25. Mr. Griffin's case was reinstated on December 3, 2014. Doc. No. 37. At the hearing on Mr. Griffin's motion to reinstate his case, Mr. Griffin appeared in court and testified about his experience with the Defendant. Mr. Griffin testified:

1.  that the Defendant gave him advice about what chapter bankruptcy he should file, Griffin Transcript, UST-C at 10, lines 16-25.
2.  that the Defendant prepared Mr. Griffin's application to pay his filing fee in installments with information Mr. Griffin provided, Griffin Transcript, UST-C at 4, lines 18-25; *id.* at 5, lines 1-25; *id.* at 6, lines 1-9;
3.  that the Defendant advised Mr. Griffin "what [his] steps should be" with regard to the motion to compel compliance with the automatic stay; *id.* at 7, lines 11-13;
4.  that the Defendant prepared documents in connection with Mr. Griffin's bankruptcy case, *id.* at 10, lines 6-10, including a motion to compel compliance with the automatic stay which the Defendant prepared and presented to Mr. Griffin for signature, *id.* at 6, lines 24 - 25; *id.* at 7, lines 1- 23;
5.  that the Defendant also prepared a motion to reinstate the automatic stay on Mr. Griffin's behalf and that the Defendant gave Mr. Griffin legal advice related thereto, prepared the motion, brought the motion to Mr. Griffin to be signed, and did not explain the document to Mr. Griffin until after he had signed it, *id.* at 7, lines 24-25; *id.* at 8, lines 1-25; *id.* at 9, 1-17; and
6.  that Mr. Griffin had used the Defendant's petition preparation services in the past, that in addition to a chapter 7 case in which Mr. Griffin received a discharge, the Defendant helped Mr. Griffin prepare two prior chapter 13 cases which were dismissed for failure to pay filing fees, and that this case too had been dismissed for failure to file documents, *id.* at 9, lines 23-25; *id.* at 10, lines 1-7.

As alluded to above, the court would like to note for the record that Mr. Griffin had previously filed bankruptcy cases with this court including Case No. 13-31765, a chapter 13 case which Mr. Griffin filed *pro se* with the assistance of the Defendant which was dismissed for failure to pay a filing fee, and Case No. 14-10150, another chapter 13 case which Mr. Griffin filed *pro se* with the assistance of the Defendant which was dismissed for failure to pay a filing fee.

The Office of the United States Trustee was unable to procure evidence that Mr. Griffin paid the Defendant for his services. Furthermore, nothing in Mr. Griffin's petition indicates that Mr. Griffin made any payment to the Defendant in conjunction with his bankruptcy case. *See* Doc. No. 1 in Case No. 14-29500.

### D. James P. Coursey

The third case described in the Vara Proceeding is that of James P. Coursey who filed a *pro se* chapter 13 bankruptcy petition on December 5, 2014 on which the Defendant certified under penalty of perjury that he served as Mr. Coursey's bankruptcy petition preparer. Doc. No. 1 in Case No. 14-34622 at 3, 41. Mr. Coursey's case was dismissed on January 20, 2015 for failure to pay the filing fee; it was subsequently reinstated on February 17, 2015. Doc. Nos. 30, 46. Prior to the dismissal of his case, Mr. Coursey appeared in court on January 6, 2015 to defend against a motion for relief from stay at which time he testified about his experience with the Defendant. Mr. Coursey testified:

1. that the Defendant was his lawyer, Coursey Transcript, UST-D at 7, lines, 1-14;
2. that the Defendant provided him with advice about his bankruptcy filing and advised him not to make his November and December rental payments because they would be included in his plan, *id.* at 6, lines 19-25; *id.* at 7, lines 7-9, 20-25; *id.* at 8, lines 1-6; *id.* at 9, line 25; *id.* at 10, lines 1-2.

There are discrepancies regarding the fees paid in Mr. Coursey's case as well. On the Disclosure of Compensation of Bankruptcy Petition Preparer B280 (Form 280), the Defendant disclosed that "[f]or document preparation services, [he had] agreed to accept" $200. Doc. No. 1 in Case No. 14-34622 at 49. However, Mr. Coursey's Statement of Financial Affairs, which was signed by the Defendant, does not list the $200 in response to question 9 addressing "[p]ayments related to debt counseling or bankruptcy." Doc. No. 1 in Case No. 14-34622 at 28, 36.

### E. Robert W. Allen

The fourth and final case described in the Vara Proceeding is that of Robert W. Allen who filed a *pro se* chapter 13 bankruptcy petition on September 4, 2012 on which the Defendant certified under penalty of perjury that he served as Mr. Allen's bankruptcy petition preparer. Doc. No. 1 in Case No. 12-31914 at 3, 34. Mr. Allen's case was dismissed on April 25, 2014 after he failed to make payments to the Chapter 13 Standing Trustee; it was subsequently reinstated on May 27, 2014. Doc. Nos. 37, 45. The case was again dismissed on October 22,

2014 for failure to make payments to the Chapter 13 Standing Trustee and again reinstated on December 2, 2014. Doc. Nos. 49, 56. At the hearing on Mr. Allen's second motion to reinstate his case, Mr. Allen appeared in court and testified about his experience with the Defendant. Mr. Allen testified:

1.    that he contacted the Defendant for advice and assistance about how to file his bankruptcy case and that the Defendant provided same, Allen Transcript, UST-E at 5, lines, 9-23;

2.    that the Defendant prepared the motion to reinstate, Mr. Allen's certification, the proposed form of order, and the certificate of service associated with those documents, *id*. at 5, lines 24 -25; *id*. at 6, lines 1-25; *id*. at 7, lines 1-15.

A review of the motion to reinstate in Mr. Allen's case reveals that the Defendant did not identify himself, sign, or provide his name, address, or social security number on any of the documents he allegedly prepared for Mr. Allen. Doc. No. 40.

There are discrepancies regarding the fees paid in Mr. Allen's case as well. On the Disclosure of Compensation of Bankruptcy Petition Preparer B280 (Form 280), the Defendant disclosed that "[f]or document preparation services, [he had] agreed to accept" $150. Doc. No. 1 in Case No. 12-31914 at 37. However, Mr. Allen's Statement of Financial Affairs, which the Defendant signed, does not list the $150 in response to question 9 addressing "[p]ayments related to debt counseling or bankruptcy." Doc. No. 1 in Case No. 12-31914 at 26, 34.


**F.  Ronnie Hill**

Ronnie Hill filed a *pro se* chapter 7 bankruptcy petition on May 15, 2014 on which the Defendant certified under penalty of perjury that he served as Mr. Hill's bankruptcy petition preparer. Doc. No. 1 in Case No. 14-19863 at 3, 53. Mr. Hill received a discharge on August 29, 2015, Doc. No. 26, but the chapter 7 trustee subsequently filed a notice of discovered assets on September 22, 2014 related to the proceeds from the sale of Mr. Hill's former marital home which was sold before Mr. Hill filed for bankruptcy. Doc. No. 29.

At some point after Mr. Hill became aware of the significance of the chapter 7 trustee's queries and actions, Mr. Hill hired Mr. Herron to represent him in conjunction with his bankruptcy. On March 10, 2015, Mr. Hill, with the assistance of Mr. Herron, filed a voluntary motion to dismiss his case on the theory that Mr. Hill would be better served by proceeding outside of bankruptcy. Doc. No. 38. The chapter 7 trustee vehemently opposed Mr. Hill's motion to dismiss, alleging that Mr. Hill's case had been woefully mismanaged and that there were assets of the estate which had not been properly accounted for and from which he sought to recover. Doc. No. 40. Mr. Hill's motion to dismiss was granted on April 21, 2015, however no order dismissing the case was ever submitted. On or around July 10, 2015 the Debtor and the chapter 7 trustee entered into a consent order which allowed the case to remain open and stipulated that Mr. Hill would be required to make certain payments to the chapter 7 trustee and to assign his rights to recovery in connection with the Hill Proceeding to the chapter 7 trustee as well.

While it is clear from Mr. Hill's testimony at the May 28, 2015 hearing that he knew the Defendant personally, and in fact was a friend of the Defendant, and that he thus understood that the Defendant was not an attorney, Mr. Hill testified that the Defendant proffered his services as knowledgeable; that Mr. Hill thought the Defendant knew what he was doing; that the Defendant never told Mr. Hill of the limitations of his services or the fact that he was not permitted to give legal advice; and that Mr. Hill had relied on the Defendant's legal advice in the past since Mr. Hill had previously filed for bankruptcy with the Defendant's assistance. Mr. Hill also stated that the Defendant did not give him a copy of his petition documents until approximately one week after Mr. Hill had signed the documents and paid the Defendant, that Mr. Hill did not have an opportunity to review the documents prior to signing them, and that the Defendant did not review same with Mr. Hill either before or after Mr. Hill signed them. More specifically, Mr. Hill testified:

1.  that the Defendant selected a chapter 7 filing for him;

2.  that the Defendant filed Mr. Hill's petition with the court on his behalf;

3.  that the Defendant prepared Mr. Hill's application to pay his filing fee in installments, P-15, that Mr. Hill gave the Defendant the first of his filing fee installment payments in the form of a money order, that the Defendant brought the money order to the court, and that the Defendant never explained that this was not permissible;

4.  that the Defendant asked Mr. Hill about his personal property and Mr. Hill provided him with information which the Defendant used to fill out Schedule B, P-16;

5.  that the Defendant did not explain how he treated Mr. Hill's $24,000 "divorce distribution," related to the sale of Mr. Hill's former marital home, in Schedule B and that the Defendant did not explain that the settlement might have a significant impact on Mr. Hill's bankruptcy, P-16;

6.  that Mr. Hill did not understand what exemptions were, that the Defendant selected Mr. Hill's exemptions for him, and that the Defendant filled out Mr. Hill's Schedule C exemptions, P-17;

7.  that the Defendant did not provide Mr. Hill with a copy of the Declaration Concerning Debtor's Statement of Financial Affairs B6 Declaration (Official Form 6 – Declaration), P-18;

8.  that he had informed the Defendant that he sold his former marital home approximately a month before filing for bankruptcy, yet the Defendant failed to list that sale as an "other transfer" in response to question 10 on Mr. Hill's Statement of Financial Affairs, that he did not receive a copy of his Statement of Financial Affairs before he signed it, nor did he have an opportunity to review it before he signed it, and the Defendant did not explain the document to him at any point, P-19;

9.  that the Defendant did not give Mr. Hill the opportunity to read the Certification of Notice to Consumer Debtor(s) Under § 342(b) of the Bankruptcy Code B 201B (Form 201B) in full before Mr. Hill signed it, that the Defendant did not explain same to Mr. Hill before Mr. Hill signed it, and

that the Defendant did not give Mr. Hill a copy of the document until a week after he had signed it, P-20 at 3;

10. that the Defendant did not explain the Declaration and Signature of Non-Attorney Bankruptcy Petition Preparer B19 (Official Form 19) to Mr. Hill before Mr. Hill signed it, that the Defendant did not explain that he was limited in the actions he could perform within the bankruptcy case, and that Mr. Hill did not receive a copy of the document at the time he signed it, P-21;

11. that Mr. Hill did not have an opportunity to review the Notice to Debtor by Non-Attorney Bankruptcy Petition Preparer B19 (Official Form 19) before he signed it, that the Defendant did not explain same to him, that the Defendant did not explain the document to Mr. Hill at the time he provided Mr. Hill with a copy thereof, and that Mr. Hill did not receive a copy of the document until a week later, P-22; and

12. that the Defendant listed a $100 payment from Mr. Hill in connection with this bankruptcy filing on Mr. Hill's Disclosure of Compensation of Bankruptcy Petition Preparer B280 (Form 280), but that Mr. Hill recalls paying the Defendant $150, P-23.

There are discrepancies regarding the fees paid in Mr. Hill's case as well. At the May 28, 2015 hearing, Mr. Hill stated that he believes he paid the Defendant $150 for his services. However, Mr. Hill's Statement of Financial Affairs, which was signed by the Defendant, does not list the $150 in response to question 9 addressing "[p]ayments related to debt counseling or bankruptcy." Doc. No. 1 in Case No. 14-19863 at 32, 38. Further, on the Disclosure of Compensation of Bankruptcy Petition Preparer B280 (Form 280), the Defendant disclosed that "[f]or document preparation services, [he had] agreed to accept" $100. Doc. No. 1 at 55.

### G. Testimony of Donna Wenzel

Donna L. Wenzel, Esquire, Staff Attorney to Isabel Balboa, the Chapter 13 Standing Trustee, testified about her experiences with the Defendant at the May 28, 2015 hearing. Ms. Wenzel also testified about data stored in her office's records regarding the Defendant and his filings. In particular, she stated that her office had documented well over 1,000 cases in which the Defendant had assisted debtors in filing chapter 13 petitions. In the fifty-seven months leading up to the May 28, 2015 hearing, the Chapter 13 Standing Trustee's Office is aware of 196 cases in which the Defendant was listed as a debtor's petition preparer.

Ms. Wenzel testified from over sixteen years' worth of experience with chapter 13 debtors who have indicated during their Section 341 meetings of creditors that the Defendant served as their bankruptcy petition preparer. Ms. Wenzel testified that, in her experience, debtors have consistently testified that the Defendant prepares petitions for them, that the debtors take their petitions and filing fees to the court, and that the Defendant generally structures their plans, determining plan payments and exemptions. Ms. Wenzel also testified that many debtors testified that the Defendant prepared applications to pay filing fees in installments for them. Moreover, she testified that the testimony of Ms. Bogan and Ms. Hill is consistent with her experiences with debtors who have engaged the Defendant's services.

Ms. Wenzel testified about four representative facsimile cover sheets sent to her office on behalf of various debtors on which the Defendant's name and facsimile number appear in the transmission information. *Certification of Donna Wenzel* at Exhibit B, UST-F.[12] Ms. Wenzel stated that she believes that the facsimile number is that of the Defendant because debtors have told her and her colleagues that the Defendant sent the facsimiles in question were sent to the Chapter 13 Standing Trustee's Office on their behalf. *Id.*

Ms. Wenzel also testified about several orders in cases not related to these Proceedings which sanctioned the Defendant in connection with his services as a bankruptcy petition preparer. *Certification of Donna Wenzel* at Exhibit D-I, UST-F. With the exception of one order in which the Defendant was sanctioned for violating section 110(g), the motions for sanctions were filed when the debtors presented the Chapter 13 Standing Trustee's Office with receipts demonstrating that they had paid the Defendant amounts that differed the amounts documented in the Defendant's certifications filed with each of those debtors' respective petitions. These orders required the Defendant to pay sanctions to the Chapter 13 Standing Trustee's Office.[13] In one of the cases in which an order for sanctions was entered, Ms. Wenzel testified that the Honorable Gloria M. Burns (ret) held a hearing at which both the debtor and the Defendant testified and that the result of that hearing was a section 110(g) sanction against the Defendant for bringing a petition and fee to the court for filing on the debtor's behalf. *Certification of Donna Wenzel* at Exhibit G, UST-F. Ms. Wenzel testified that she is not aware if her office ever receiving a payment for sanctions from the Defendant in connection with any of the orders.[14]

## V.    CONCLUSIONS OF LAW

The court has read the briefs and certifications submitted in connection with these Proceedings, has taken testimony, and has found the various accounts of the Defendant's conduct "credible and compelling," especially in light of the "remarkable consistency in the description of [the various debtors'] interactions" with the Defendant. *Staiano v. File Aid of New Jersey et al. (In re Bradshaw)*, 233 B.R. 315, 318 (Bankr. D.N.J. 1999) ("*Bradshaw*"). It is obvious to the court that the allegations in the complaints, the submissions of the parties, and the testimony taken at the May 28, 2015 hearing all fall squarely within the province of section 110 and its proscriptions. The Ninth Circuit analyzed section 110 and determined that it is constitutional for the bankruptcy courts to enforce its provisions. *In re Doser*, 412 F.3d 1056, 1061 (9th Cir. 2005)

---

[12] These documents were introduced into evidence as UST-1, UST-2, UST-3, and UST-4 without the court's heading which was present on the official exhibit sheets since said heading obscured the facsimile transmission information including the Defendant's name and facsimile number.

[13] In one case, the Defendant was required to make a payment directly to the debtor in question and Ms. Wenzel advised the court that that debtor claims that she never received any payment in connection with that order. Certification of Donna Wenzel at Exhibit H, UST-F.

[14] Ms. Wenzel testified about her office's procedures for collecting funds and the strict and repeated directions she gave to her office and to the people collecting checks at a locked box used by the Chapter 13 Standing Trustee's Office to report any payments received from the Defendant (with the exception of payments made by the Defendant in connection with his personal chapter 13 bankruptcy filings) directly to her or to her paralegals.

(stating "Article I, Section 8, Clause 4 of the United States Constitution grants Congress the authority "to establish . . . uniform laws on the subject of Bankruptcies." U.S. Const., art. I, § 8, cl. 4. Congress is also bestowed the power to "make all Laws which shall be necessary and proper for carrying into Execution" its granted authority. U.S. Const., Art. I, § 8, cl. 18."). Indeed, "Section 110 was added to the Bankruptcy Code to create a set of standards and accompanying penalties to regulate bankruptcy petition preparers, who are not employed or supervised by attorneys and who had proliferated across the country, often taking advantage of poor and non-English speaking debtors. 140 Cong. Rec. H10, 770 (October 4, 1994)." *Id.* at 1061.

## A.  Analyzing Section 110 of the Bankruptcy Code

Section 110 of the Bankruptcy Code sets forth a slew of rules related to bankruptcy petition preparers. In coming to its conclusions, this court is guided by the court's decision in *Bradshaw* in analyzing the various allegations the parties have lodged against the Defendant in these Proceedings. In *Bradshaw* the court issued a permanent injunction against various individual and business defendants who, while acting as bankruptcy petition preparers, "continually engaged in conduct in violation of 11 U.S.C. § 110 and engaged in significant fraudulent, unfair and/or deceptive conduct." *Bradshaw*, 233 B.R. at 329. The *Bradshaw* court cited the fact that the "Defendants' clients sojourn into the bankruptcy system was consistently short and fruitless" as evidence that the petition preparers in that case were not providing a valid service for the benefit of their clients. *Id.* at 325. The court determined that a permanent injunction "prohibiting defendants from directly or indirectly acting as bankruptcy petition preparers in [that] jurisdiction and in any other jurisdiction in the United States"[15] was appropriate since it believed that the defendants would violate section 110 again given the opportunity. *Id.* at 329. The *Bradshaw* court also required its defendants to disgorge fees and pay fines under section 110 based upon their conduct. *Id.* at 329-32.

The *Bradshaw* court explained:

Section 110 was intended to protect consumers from abuses by non-lawyer bankruptcy petition preparers. In enacting section 110, Congress sought to confront petition preparers "who prey on the poor and unsophisticated", [sic] who "attempt to provide legal advice and legal services" and/or who "take unfair advantage of persons who are ignorant of their rights both inside and outside the bankruptcy system."

*Id.* at 325-26 (citing 140 Cong. Rec. S14597-02 (daily ed. Oct. 7, 1994)); *see Bartok v. DeAngelis*, No. 11-cv-03710 (SDW), 2012 WL 664928, at *5-*6 (D.N.J. Feb. 29, 2012) (citing the House Report legislative history behind section 110, which found that "[w]hile it is permissible for a petition preparer to provide services solely limited to typing, far too many of them also attempt to provide legal advice and legal services to debtors. These preparers often lack the necessary legal training and ethics regulation to provide such services in an adequate

---

[15] "Section 110 does not place any geographic limit on any injunction imposed under its terms." *Bartok v. DeAngelis*, No. 11-cv-03710 (SDW), 2012 WL 664928, at *6, *8-*10 (D.N.J. Feb. 29, 2012).

and appropriate manner. These services may take unfair advantage of persons who are ignorant of their rights both inside and outside the bankruptcy system") (citing H.R. Rep. No. 103-835, at 56 (1994), reprinted in 1994 U.S.C.C.A.N. 3340, 3365). The *Bradshaw* court further described the impact of petition preparers acting outside of their statutory authority, stating "[w]ith dismaying regularity the Court has been forced to dismiss cases because defendants failed to provide their clients with schedules and statements to file, in violation of Fed. R. Bankr. P. 1007." *Bradshaw*, 233 B.R. at 322.

### B. The Defendant is a "Petition-Preparer" and has Prepared Documents for Filing Under Section 110(a)

Section 110(a) defines a "bankruptcy petition preparer" as a "person, other than an attorney for the debtor or an employee of such attorney under the direct supervision of such attorney, who prepares for compensation a document for filing." 11 U.S.C. § 110(a). It defines a "document for filing" as "a petition or any other document prepared for filing by a debtor in a United States bankruptcy court or a United States district court in connection with a case under this title." *Id.* The *Bradshaw* court elaborates that "petitions, plans, schedules, statements, certifications, motions and other documents filed in bankruptcy cases are each [ ] separate 'document[s] for filing'" for purposes of section 110(a)." *Bradshaw*, 233 B.R. at 326 (citations omitted). This court agrees.

It is unquestionable from the testimony and exhibits produced at trial that the Defendant acted as a bankruptcy petition preparer as defined by section 110(a) since he is a non-attorney who acted outside of the direct supervision of an attorney who prepared documents for filing in exchange for compensation. Indeed, the Defendant acknowledges that he is a petition preparer certifying as such on the petitions of each of the Debtors involved in these Proceedings. Therefore, section 110 applies to the Defendant.

### C. The Defendant has Violated Section 110(b) of the Bankruptcy Code and has Engaged in the Unauthorized Practice of Law

Section 110(b)(1) provides that an individual "bankruptcy petition preparer who prepares a document for filing shall sign the document and print on the document the preparer's name and address." 11 U.S.C. § 110(b)(1). "Before preparing any document for filing or accepting any fees from or on behalf of a debtor, the bankruptcy petition preparer shall provide to the debtor a written notice which shall be on an official form prescribed by the Judicial Conference of the United States in accordance with rule 9009 of the Federal Rules of Bankruptcy Procedure." *Id.* § 110(b)(2). Such notice:

(i)     shall inform the debtor in simple language that a bankruptcy petition preparer is not an attorney and may not practice law or give legal advice;

(ii)    may contain a description of examples of legal advice that a bankruptcy petition preparer is not authorized to give, in addition to any advice that the preparer may not give by reason of subsection (e)(2); and

> (iii)    shall—
>> (I)    be signed by the debtor and, under penalty of perjury, by the bankruptcy petition preparer; and
>> (II)    be filed with any document for filing.

*Id.* § 110(b)(2)(B).

The complaints in both the Bogan and the Hill Proceedings allege that the Defendant violated section 110(b)(2) by failing to provide to the debtors with a written notice of his role, as described in that subsection, prior to preparing each document for filing or prior to accepting any fees from or on behalf of a debtor. Ms. Bogan testified that the Defendant did not provide Ms. Bogan with a copy of the Declaration and Signature of Non-Attorney Bankruptcy Petition Preparer B19 (Official Form 19) or the Notice to Debtor by Non-Attorney Bankruptcy Petition Preparer B19 (Official Form 19) until at least a week after she signed her blank petition. Mr. Hill also testified that he did not receive a copy of the Declaration and Signature of Non-Attorney Bankruptcy Petition Preparer B19 (Official Form 19) or the Notice to Debtor by Non-Attorney Bankruptcy Petition Preparer B19 (Official Form 19) until at least a week after he signed his blank petition. Therefore, the Defendant has violated section 110(b).

In addition, section 110 makes "clear that petition preparers may only charge for typing services." *Bradshaw*, 233 B.R. at 323, 328 ("Section 110 also makes clear that bankruptcy petition preparers may *only* provide typing services to their customers and sets forth very specific requirements to be followed by petition preparers.") (emphasis in the original). The *Bartok* court similarly explained:

> Section 110 itself proscribes virtually all conduct falling into the category of guidance or advice, effectively restricting 'petition preparers' to rendering only "scrivening/typing" services. Anything else—be it suggesting bankruptcy as an available remedy for a debtor's financial problems, merely explaining how to fill out the schedules, or answering questions about exemptions or whether a claim is or is not secured will invariably contravene either state laws proscribing the unauthorized practice of law or other more specific provisions of § 110. The only service that a bankruptcy petition preparer can safely offer and complete on behalf of a pro se [sic] debtor after the enactment of § 110 is the "transcription" of dictated or handwritten notes prepared by the debtor prior to the debtor having sought out the petition preparer's service. Any other service provided on behalf of the debtor by a non-attorney (even telling the debtor where the information goes on the form) is not permitted under state unauthorized practice of law statutes, and so is also not authorized by § 110.

*Bartok*, 2012 WL 664928, at *6 (citing *In re Guttierez*, 248 B.R. 287, 297-98 (Bankr. W.D. Tex. 2000)). Performing work in excess of that permitted by the statute, for example preparing applications to pay filing fees in installments, motions to reinstate or reopen, and reaffirmation agreements or providing advice regarding "how the clients' financial information [is] entered on the petition and schedules" constitutes the unauthorized practice of law. *Bradshaw*, 233 B.R. at 322.

The complaints in all three Proceedings allege that the Defendant violated section 110(b)(1) by failing to sign documents for filing and failing to print his name and address on them. Ms. Bogan testified that the Defendant prepared an application to waive the filing fee on her behalf. Ms. Bogan's application was not signed by the Defendant and it does not contain the Defendant's name or address. Ms. Jamison testified that Defendant prepared her motion to reopen her case and the related certificate of service on her behalf. Neither of these documents was signed by the Defendant and they do not contain the Defendant's name or address. Mr. Griffin testified that the Defendant prepared an application to pay filing fee in installments, a motion to compel compliance with the automatic stay, and a motion to reinstate the automatic stay on his behalf. None of these documents were signed by the Defendant and they do not contain the Defendant's name or address. Mr. Allen testified that the Defendant prepared a motion to reinstate on his behalf along with a related certification, proposed form of order, and certificate of service. None of these documents were signed by the Defendant and they do not contain the Defendant's name or address. Lastly, Mr. Hill, the Defendant's friend, testified that the Defendant prepared an application to pay the filing fee in installments on his behalf. The Defendant did not sign the application and it does not contain his name or address.

Accordingly, the plaintiffs have established the elements necessary for entries of judgment on Count One of the Bogan Proceeding, Count Two of the Vara Proceeding, and Count One of the Hill Proceeding. Further, through his preparation of pleadings in excess of that permitted by the statute, the Defendant has engaged in the unauthorized practice of law.

### D.  The Defendant has Violated Section 110(c)

Bankruptcy petition preparers who prepare documents for filing are required to "place on the document, after the preparer's signature, an identifying number," namely a social security number that identifies who prepared the document for filing. Section 110(c)(1) and (2). The complaint in the Vara Proceeding alleges that the Defendant failed to place his social security number on documents he prepared for filing as required by section 110(c). As stated above, Ms. Jamison testified that Defendant prepared her motion to reopen her case and the related certificate of service on her behalf. Neither of these documents contain the Defendant's social security number. Mr. Griffin testified that the Defendant prepared an application to pay filing fee in installments, a motion to compel compliance with the automatic stay, and a motion to reinstate the automatic stay on his behalf. None of these documents contain the Defendant's social security number. Mr. Allen testified that the Defendant prepared a motion to reinstate on his behalf along with a related certification, proposed form of order, and certificate of service. None of these documents contain the Defendant's social security number.[16] Accordingly, the plaintiff has established the elements necessary for entry of judgment on Count Three of the Vara Proceeding.

---

[16] Although violations of section 110(c) were not alleged in the Bogan or Hill Proceedings, the court notes for the record that both Ms. Bogan and Mr. Hill testified that the Defendant filed certain documents on their behalves yet a review of those documents reveals that they do not contain the Defendant's social security number.

### E.  The Defendant has Violated Section 110(d)

Bankruptcy petition preparers "shall, not later than the time at which a document for filing is presented for the debtor's signature, furnish to the debtor a copy of the document." 11 U.S.C. § 110(d). The complaint in the Bogan Proceeding alleges that the Defendant violated section 110(d) by failing to provide Ms. Bogan with numerous documents "not later than the time at which [those] document for filing [were] presented for the debtor's signature." This violation was established in the Bogan Proceeding by way of testimony from Ms. Bogan that the Defendant did not provide her with any documents until at least a week after she signed her blank petition.[17] Accordingly, the plaintiff has established the elements necessary for entry of judgment on Count Two of the Bogan Proceeding.

### F.  The Defendant has Violated Section 110(e)

Bankruptcy petition preparers are prohibited from "offer[ing] a potential bankruptcy debtor any legal advice," including advice on whether to file a bankruptcy petition, what chapter to file under, whether a debtor's debts will be discharged, whether a debtor will be able to retain his "home, car, or other property after commencing case under this title," on the tax consequences of filing a bankruptcy case or the dischargeability of tax claim, on whether a debtor "may or should promise to repay debts to a creditor or enter into a reaffirmation agreement," concerning the "nature of the debtor's interests in property or the debtor's debts," or "concerning bankruptcy procedures and rights." *Id.* § 110(e)(2).

The complaints in all three Proceedings allege that the Defendant violated section 110(e)(2) by providing the debtors with legal advice, including, but not limited to, what chapter to file under, whether a debtor "may or should promise to repay debts to a creditor or enter into a reaffirmation agreement," concerning the "nature of the debtor's interests in property or the debtor's debts," or "concerning bankruptcy procedures and rights." *Id.* As noted above, the preparing of pleadings such as applications to pay filing fees in installments, motions to reinstate or reopen, and reaffirmation agreement constituted the unauthorized practice of law. *Bradshaw*, 233 B.R. at 322.

As for the Proceedings before us, Ms. Bogan testified that the Defendant "took care" of filing out the petition on her behalf, including picking figures to report on the Ms. Bogan's schedules and selecting Ms. Bogan's exemptions for her. The Defendant also decided that Ms. Bogan should reaffirm a debt and he prepared the reaffirmation paperwork on her behalf. Ms. Jamison testified that the Defendant prepared and served motions on her behalf. Mr. Griffin testified that the Defendant gave him advice about what chapter bankruptcy he should file, that the defendant prepared his application to pay his filing fee in installments, his motion to compel compliance with the automatic stay, and his motion to reinstate the automatic stay for him, that the Defendant advised him of the steps he should take with regard to the motion to compel compliance with the automatic stay, and that the Defendant gave him legal advice with regard to

---

[17] Although violations of section 110(d) were not alleged in the Hill Proceeding, Mr. Hill similarly testified that he did not receive any documents from the Defendant until at least a week after he signed his blank petition.

the motion to reinstate the automatic stay. Mr. Coursey testified that the Defendant led him to believe that the Defendant was an attorney, that the Defendant provided him with advice about his bankruptcy filing, and that the Defendant advised him not to make his November and December (pre-petition) rent payments because they would be included in his plan. Mr. Allen testified that the Defendant prepared a motion, certification, proposed form of order, and certificate of service on his behalf. Finally, Mr. Hill testified that the Defendant selected a chapter 7 filing for him, that the Defendant filed his petition with the court, that the Defendant prepared his application to pay his filing fee in installments for him, that the Defendant brought his first filing fee installment payment to the court on his behalf, that the Defendant decided how to treat Mr. Hill's personal property when filing out Mr. Hill's petition, and that the Defendant selected Mr. Hill's exemptions. All of these actions constitute the practice of law or the provision of legal advice. Accordingly, the plaintiffs have established the elements necessary for entries of judgment on Count Three of the Bogan Proceeding, Count Four of the Vara Proceeding, and Count Two of the Hill Proceeding.

### G.  The Defendant has Violated Section 110(g)

Bankruptcy petition preparers are also prohibited from "collect[ing] or receiv[ing] any payment from the debtor or on behalf of the debtor for the court fees in connection with filing the petition." 11 U.S.C. § 110(g). The complaint in the Bogan Proceeding alleges that the Defendant violated section 110(g) by collecting or receiving payments from the debtor or on behalf of the debtor for the court fees in connection with filing the petition. Ms. Bogan testified that she gave the Defendant $300 cash of which $100 was meant to be for the Defendant and $200 was meant to pay her filing fee.[18] Accordingly, the plaintiff has established the elements necessary for entry of judgment on Count Five of the Bogan Proceeding.

### H.  Section 110(h) Requires a Disgorgement of Fees Received by the Defendant

Section 110(h)(3)(A) allows a court to "disallow and order the immediate turnover to the bankruptcy trustee any fee referred to in" section 110(h)(2)[19] which is "(i) found to be in excess of the value of any services rendered by the bankruptcy petition preparer during the 12-month

---

[18] Furthermore, although section 110(g) violations were not alleged in the Hill Proceeding, Mr. Hill also testified that the Defendant took money from him with the understanding that the Defendant would bring it to the court as the first installment of Mr. Hill's filing fee.

[19] Section 110(h)(2) states:

> A declaration under penalty of perjury by the bankruptcy petition preparer shall be filed together with the petition, disclosing any fee received from or on behalf of the debtor within 12 months immediately prior to the filing of the case, and any unpaid fee charged to the debtor. If rules or guidelines setting a maximum fee for services have been promulgated or prescribed under paragraph (1), the declaration under this paragraph shall include a certification that the bankruptcy petition preparer complied with the notification requirement under paragraph (1).

*Id.* § 110(h)(2).

period immediately preceding the date of the filing of the petition; or (ii) found to be in violation of any rule or guideline promulgated or prescribed under paragraph (1)."[20] *Id.* § 110(h)(3)(A). Section 110(h)(3)(B) provides that "[a]ll fees charged by a bankruptcy petition preparer may be forfeited in any case in which the bankruptcy petition preparer fails to comply with this subsection or subsection (b), (c), (d), (e), (f), or (g)." 11 U.S.C. § 110(h)(3)(B). Section 110(h)(3)(C) states that "[a]n individual may exempt any funds recovered under this paragraph under section 522(b)." *Id.* § 110(h)(3)(C). Fees turned over pursuant to section 110(h)(3) are to be paid to the bankruptcy trustee. *Id.* § 110(h)(3)(A).

The complaint in the Vara Proceeding asks the court to disallow and order immediate turnover fees found to be in excess of the value of any services rendered by the bankruptcy petition preparer during the 12-month period immediately preceding the date of the filing of the petition under section 110(h)(3), which incorporates section 110(h)(2)'s disclosure requirements. Ms. Jamison testified that she paid the Defendant $250 to prepare her bankruptcy petition, yet her Disclosure of Compensation of Bankruptcy Petition Preparer B280 (Form 280) indicates that "[f]or document preparation services, [the Defendant] agreed to accept" $100, and her Statement of Financial Affairs does not list any payment to the Defendant in response to question 9 inquiring about payments related to debt counseling or bankruptcy.

In Mr. Coursey's case, the Disclosure of Compensation of Bankruptcy Petition Preparer B280 (Form 280) indicates that the Defendant agreed to accept $200 for document preparation services while Mr. Coursey's Statement of Financial Affairs does not list any payment in response to question 9 addressing payments related to debt counseling or bankruptcy.

In Mr. Allen's case, the Disclosure of Compensation of Bankruptcy Petition Preparer B280 (Form 280) indicates that the Defendant agreed to accept $150 for document preparation services, however Mr. Allen's Statement of Financial Affairs does not list the $150 in response to question 9 addressing payments related to debt counseling or bankruptcy.

In all of these circumstances it is apparent that the Defendant failed to comply with section 110(h)(2)'s disclosure requirements since the discrepancies between his various disclosures indicate that he perjured himself at least once in connection with each of these cases. It is also apparent that the Defendant charged fees in excess of the value of the services he rendered. The *Bradshaw* court criticized the defendants in that case based on the fact that "nothing in the record demonstrates [ ] [their] 'services' had any value whatsoever to any of their clients. Indeed, if anything, the value of defendants' services was a negative. Innocent people relied upon defendants' empty promises to their detriment." *Bradshaw*, 233 B.R. at 325. In these

---

[20] Paragraph (1) of section 110(h)(1) states:

> The Supreme Court may promulgate rules under section 2075 of title 28, or the Judicial Conference of the United States may prescribe guidelines, for setting a maximum allowable fee chargeable by a bankruptcy petition preparer. A bankruptcy petition preparer shall notify the debtor of any such maximum amount before preparing any document for filing for the debtor or accepting any fee from or on behalf of the debtor.

*Id.* § 110(h)(1).

Proceedings there has been voluminous testimony regarding the numerous inconsistencies in the various debtors' petition documents, the fact that these debtors struggled to comply with the requirements of the bankruptcy court in light of the inaccurate and impermissible guidance the Defendant provided, and the fact that many of these cases were dismissed in light of the Defendant's negligent conduct. The court thus finds that the Defendants' services had no value whatsoever to his clients and that the defendant thus charged fees in excess of the value of the services he rendered in violation of section 110(h)(3)(A)(i). Accordingly, the plaintiff has established the elements necessary for entry of judgment on Count Five of the Vara Proceeding, alleging violations of section 110(h)(3)(A)(i), shall be and hereby is granted. Accordingly, this court hereby disallows the entire amount of Ms. Jamison's $250 fee pursuant to Count Five of the Vara complaint and orders immediate turnover of same via a check payable to Ms. Jamison and mailed to Brian Thomas, Esquire, Ms. Jamison's chapter 7 trustee.

The Bogan Proceeding requests relief under section 110(h)(3)(B) for the Defendant's violations of sections 110(b), (d),(e) and (g). Section 110(h)(3)(B) states that "[a]ll fees charged by a bankruptcy petition preparer may be forfeited in any case in which the bankruptcy petition preparer fails to comply with this subsection or subsection (b), (c), (d), (e), (f), or (g)." 11 U.S.C. § 110(h)(3)(B). As established above, the defendant violated sections 110(b), (d),(e) and (g) in the context of Ms. Bogan's bankruptcy case. Ms. Bogan testified that she gave the Defendant $300 in connection with her bankruptcy proceeding, which the Defendant appears to have retained even though only $100 of that amount was meant as compensation for him. Accordingly, this court hereby disallows the entire amount of Ms. Bogan's $300 fee pursuant to Counts Two, Three, and Five of the Bogan complaint and orders immediate turnover of same via check payable to Ms. Bogan and mailed to Joseph Marchand, Esquire, Ms. Bogan's chapter 7 trustee.

Similarly, the Hill Proceeding requests relief under section 110(h)(3)(B) for failing "to comply with this subsection or subsection (b), (c), (d), (e), (f), or (g)." 11 U.S.C. § 110(h)(3)(B). As established above, the defendant violated sections 110(b) and (e) in the context of Mr. Hill's bankruptcy case. Mr. Hill testified that he believes he paid the Defendant $150 for his services. Since the Defendant did not submit any testimony or evidence to refute this contention, this court accepts Mr. Hill's testimony that he paid the Defendant $150 for his services. Accordingly, this court hereby disallows the entire amount of Mr. Hill's $150 fee pursuant to Counts Two of the Hill complaint and orders immediate turnover of same via check payable to Mr. Hill and mailed to Douglas Stanger, Esquire, Mr. Hill's chapter 7 trustee.

As for the request for these forfeited funds to be exempt under section 110(h)(3)(C), such exemption is Ms. Bogan's and Mr. Hill's statutory right but the court cannot declare said funds exempt in this manner. If Ms. Bogan and/or Mr. Hill would like to declare the forfeited fees exempt it is up to them to amend their respective schedules to reflect that exemption.

## I.   Sanctions are Warranted Under Section 110(i)

In the event that a bankruptcy petition preparer "violates [section 110(i)] or commits any act that the court finds to be fraudulent, unfair, or deceptive, on the motion of the debtor, trustee,

United States trustee . . . and after notice and a hearing, the court shall order the bankruptcy petition preparer to pay to the debtor" the debtor's actual damages, the greater of $2,000.00 or "twice the amount paid by the debtor to the bankruptcy petition preparer for the preparer's services," and "reasonable attorneys' fees and costs in moving for damages under this subsection." 11 U.S.C. § 110(i)(1).

The complaint in the Vara Proceeding alleges that the Defendant violated section 110(i)(1) by violating section 110 or committing fraudulent, unfair, or deceptive acts. Section 110(i)(1) contains a damages provision. The *Bradshaw* court cited the fact that the defendants "created the false impression that they were qualified to give legal advice" as evidence that they engaged in fraudulent, unfair, or deceptive conduct. *Bradshaw*, 233 B.R. at 321. In the Proceedings before us, it is abundantly clear at this point that the Defendant repeatedly violated section 110. In addition to the violations already established, the Defendant acted deceptively for example when he told Ms. Jamison that he used to be an attorney and that he therefore knew how to file paperwork with the court. He also acted deceptively by failing to inform Mr. Griffin, Mr. Coursey, and Mr. Allen about the limited scope of services he was permitted to render. Cumulatively, the Defendants actions instilled in his clients the false impression that he was qualified to give legal advice. [21] Accordingly, the plaintiff has established the elements necessary for entry of judgment on Count Five of the Vara Proceeding. This court hereby grants a $2,000 sanction via a check payable to Ms. Jamison and mailed to the Office of the United States Trustee pursuant to Count Five of the Jamison complaint.

## J.  Injunctive Relief is Appropriate Under Section 110(j)

Section 110(j) provides a right to bring a civil action for injunctive relief against a bankruptcy petition preparer. 11 U.S.C. § 110(j)(1). Section 110(j)(2) states that if a court finds that a bankruptcy petition preparer has (I) "engaged in conduct in violation of this section or of any provision of this title;" (II) "misrepresented [his] experience or education as a bankruptcy petition preparer;" *or* (III) "engaged in any other fraudulent, unfair, or deceptive conduct" *and* it appears that "injunctive relief is appropriate to prevent the recurrence of such conduct . . . the court may enjoin the bankruptcy petition preparer from engaging in such conduct." *Id.* § 110(j)(2)(A)(i). Furthermore, section 110(j)(2)(b) provides that:

> If the court finds that a bankruptcy petition preparer has *continually engaged* in conduct described in subclause (I), (II), or (III) of clause (i) and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title, has not paid a penalty

---

[21] Although the Bogan and Hill Proceedings did not request relief under section 110(i)(1), the defendant acted deceptively when he did not inform Ms. Bogan or Mr. Hill that he was not allowed to give legal advice despite the fact that they were clearly under the impression that he could and the fact that he did indeed provide them both with legal advice. He acted unfairly when he did not provide Ms. Bogan and Mr. Hill with copies of their respective petitions until over a week after they had signed them and in spite of Ms. Bogan's repeated demands for copies of the same. Furthermore, the Defendant acted deceptively when he told Ms. Bogan that the money she gave him was going to pay her filing fee despite the fact that he applied for a filing fee waiver on her behalf, and he acted fraudulently when he selected figures to fill out Ms. Bogan's schedules without any basis in fact. Similarly, he acted fraudulently when he filled out Mr. Hill's petition with information he knew to be incorrect.

imposed under this section, or failed to disgorge all fees ordered by the court[,] *the court may enjoin the person from acting as a bankruptcy petition preparer.*

*Id.* § 110(j)(2) (emphasis added).

A permanent injunction is a drastic remedy and the movant requesting it carries the burden of persuasion. *United States v. Alabama,* No. 2:06-cv-392-WKW, 2006 WL 1598839, at *2 (M.D. Ala. June 7, 2006). However, whenever permanent injunctive relief is sought pursuant to statutory authority, the burden on the movant is less stringent. *Id.* In deciding to grant a permanent injunction pursuant to statutory authority, courts generally consider "(1) whether there is an actual violation of a statute and (2) whether there is a likelihood of future violations." *Bradshaw*, 233 B.R. at 326 (citations omitted). *See also United States v. Alabama,* 2006 WL 1598839, at *2. Courts do not look for irreparable harm when the authority to grant an injunction is a result of a statute because when "Congress has seen fit to act in a given area by enacting a statute, irreparable injury must be presumed in a statutory enforcement action." *Bradshaw,* 233 B.R. at 326 (citing *United States v. Richlyn Laboratories, Inc.*, 827 F. Supp. 1145, 1150 (E.D. Pa. 1992)). "Where the power to grant a declaratory judgment has been statutorily conferred on the courts, they may grant declaratory judgment in a case of actual controversy, irrespective of whether further relief is or could be sought." *United States v. Alabama,* 2006 WL 1598839, at *3.

The court has already found that the Defendant has actually violated various provisions of section 110. So plaintiffs have met their burden with regard to the first part of the court's consideration.  As to the second part of the court's consideration, "[a] determination of whether there is reasonable likelihood of future violations is based upon the totality of the circumstances. Significantly, past misconduct is highly suggestive of the likelihood of future violations. In particular, when the misconduct has been founded on systematic wrongdoing rather than an isolated occurrence, a court should be more willing to enjoin the defendant." *Bradshaw,* 233 B.R. at 329 (internal marks and citations omitted).

In determining that a broad injunction was appropriate under its facts, the *Bradshaw* court stated:

> As a consequence of the above conduct, the Court finds that an injunction which simply prohibits defendants from violating the various provisions of section 110 is insufficient to prevent defendants' interference with the proper administration of Title 11. Defendants' misconduct is so varied and comprehensive in scope that only injunctive relief that bars defendants from acting as petition preparers will prevent further injury to an unsuspecting public and alleviate the burden on the bankruptcy court system.

*Id.* at 329. The *Bradshaw* court emphasized the fact that defendants' conduct persisted in spite of the fact that defendants were notified "actually or constructively" of "the limitations on their activities under section 110 and despite the fact that they were admonished about the way they conducted their business" in reaching its determination that a permanent injunction was an appropriate form of relief. *Id.* at 323.

The complaints in all three Proceedings allege that the Defendant engaged in continuous conduct in violation of section 110. It is clear from all of the testimony and the facts cited above that the Defendant continually engaged in conduct in violations of section 110. To begin, the Defendant went well beyond his statutory authority to type or transcribe petitions; he determined what to put into the petitions and where, what exemptions the debtors should take, and what applications and motions the debtors should file. As alluded to above, the Defendant made all of the decisions with regard to Mr. Hill's petition including the decisions regarding how to treat the proceeds of the pre-petition sale of Mr. Hill's house. It was the Defendant's erroneous and impermissible legal advice and misdocumentation of this transaction that led to the extreme confusion and undue litigation that has come to dominate Mr. Hill's case and that has caused this chapter 7 case to remain alive more than a year after it was filed.

In addition, the court heard testimony that the Defendant took money directly from Ms. Bogan and Mr. Hill, that he deceived several debtors by leading them to believe he was authorized to give legal advice, including advice about what chapter bankruptcies the debtors should file, what motions to file, and what exemptions to take, that he failed to identify himself on numerous documents he prepared on behalf of debtors, and that he misrepresented his experience or education when interacting with debtors, as, for example, when he indicated to Ms. Jamison that he used to be an attorney and that he therefore knew how to file paperwork with the court or when he led Mr. Coursey to believe that he was in fact an attorney. Furthermore, Ms. Bogan was under the impression that the Defendant was a paralegal and that he was permitted to give her legal advice and he took no steps to correct that impression.

Ms. Wenzel also provided critical information regarding the Defendant's history within this jurisdiction and the patterns she has noticed when dealing with debtors who have worked with the Defendant, in particular the fact that the Defendant prepares petitions on their behalves, that the Defendant generally structures their plans and determines their plan payments, that the Defendant determines their exemptions, and that the Defendant prepares applications to pay filing fees in installments on behalf of certain debtors when necessary. Ms. Wenzel also provided specific information regarding past court orders for sanctions which the Defendant has violated. As in the *Bradshaw* case, this testimony makes clear that even though the Defendant has been notified "actually or constructively" of "the limitations of [his] activities under section 110 and despite the fact that [he was] admonished about the way [he] conducted [his] business," the Defendant has persisted in his conduct. *Bradshaw*, 233 B.R. at 323.

At the request of the court, the clerk's office analyzed its records to understand the breadth of the Defendant's filings within our district. The court would also like to take judicial notice of certain facts this search revealed. *See* Fed. R. Evid. 201, 101, and 1001; Fed. R. Bankr. P. 9017; *In re W.P. Hickman Systems, Inc.*, No. 10-2289JAD, 2012 WL 2905446, at *4 (Bankr. W.D. Pa. July 16, 2012) (stating that "a court may, in its discretion, take judicial notice on its own" and that "a court may take judicial notice of its own documents" so long as it does "not do so for the truth of the contents contained therein" but only for the "filing and existence of the documents"). The Defendant was listed as a petition preparer in 998 bankruptcy cases filed in the District of New Jersey between 1998 and October 9, 2014. Of those cases 998 cases, 708 involved debtors who requested to pay the filing fee in installments and 571 were dismissed

without discharge. Of the 571 cases which were dismissed without discharge, 61 were dismissed for failure to file papers and 208 were dismissed for failure to pay the filing fee.

Between October 9, 2014, when this court originally ran its search in connection with the Bogan Proceeding, and September 17, 2015 when this court re-ran its search while in the process of writing this opinion, the Defendant was listed as a petition preparer on 109 new cases filed with this district and a significant number of those cases have been dismissed or closed without discharge.

The *Bradshaw* court described the impact of petition preparers overstepping their statutory limits, stating "[w]ith dismaying regularity the Court has been forced to dismiss cases" when the conduct of the petition preparers impeded debtors from successfully completing their bankruptcies. *Bradshaw*, 233 B.R. at 322. In the matters presented to the court in these Proceedings, likewise the dismaying regularity with which debtors who engage the Defendant's services find their cases dismissed and the number of times the Defendant has been sanctioned for violating section 110 demonstrate that the Defendant's services have no value and are indeed harmful to his clients. As noted above, several of the debtors whose bankruptcy cases led to these Proceedings filed previous bankruptcies with the assistance of the Defendant that failed to proceed to discharge. This is further evidence of the fact that the Defendant's services are harming the population he purports to serve. As in the *Bradshaw* case, the Defendant's conduct has resulted in "consistently short and fruitless" "sojourn[s] into the bankruptcy system" for his clients. *Id.* at 325. This pattern demonstrates that the Defendant is not providing a valid service for the benefit of his clients. *Id.*

The court has heard voluminous testimony regarding the Defendant's violations of section 110 and the "varied and comprehensive" nature of those violations, which include numerous instances of fraudulent and deceptive conduct. *Id.* at 329. The Defendant appears to "prey on the poor and unsophisticated" and to "take unfair advantage of persons who are ignorant of their rights both inside and outside the bankruptcy system." *Id.* at 325-326 (citing 140 Cong. Rec. S14597-02 (daily ed. Oct. 7, 1994)). This is exactly the type of conduct section 110 aims to prevent. Furthermore, it is clear to the court that the Defendant has a history of flouting court orders sanctioning him for similar conduct. In light of these facts, the court finds that the Defendant's conduct will likely recur and that an injunction "which simply prohibits defendants from violating the various provisions of section 110 is insufficient" to prevent the Defendant from "interfere[ing] with the proper administration of Title 11" in the future. *Id.* at 329. As such, this court finds that it is appropriate to permanently enjoin the Defendant from directly or indirectly acting as a bankruptcy petition preparer in this jurisdiction. *Id.*

Accordingly, the plaintiffs have satisfied their burden under Count Six of the Bogan Proceeding, Count One of the Vara Proceeding, and Count Three of the Hill Proceeding and the court will enter a permanent injunction barring the Defendant from acting as a petition preparer.

### K.  Monetary Sanctions Against the Defendant

#### 1.  Section 110(j)

Under section 110(j)(4), "[t]he court shall award to a debtor, trustee, or creditor that brings a successful action under this subsection reasonable attorneys' fees and costs of the action, to be paid by the bankruptcy petition preparer." 11 U.S.C. § 110(j)(4). As established above, the Debtor plaintiffs have established that the Defendant violated section 110 and their successful prosecution of the Bogan and Hill Proceedings has resulted in a permanent injunction barring the Defendant from serving as a bankruptcy petition preparer. Since Ms. Bogan and Mr. Hill were successful in their efforts to enjoin the Defendant, the court must award reasonable attorney's fees. In the Bogan case, the attorney requested $2,500 in legal fees in its Damages Report, Doc. No. 19 in the Bogan Proceeding, however, no legal fees were requested in the Damage Report in the Hill Proceeding, *see* Doc. No. 19. Therefore, no fee will be granted in the Hill Proceeding. Since no parties have objected to the reasonableness of $2,500 legal fee request in the Bogan Proceeding and the court believes it is reasonable in light of the amount of work necessary to prosecute the Bogan Proceeding to its successful completion, Ms. Bogan is therefore awarded $2,500 in legal fees as requested in Count Six of the Bogan complaint.

#### 2.  Section 110(*l*)

In addition, with regard to damages, section 110(*l*) provides that a "bankruptcy petition preparer who fails to comply with any provision of subsection (b), (c), (d), (e), (f), (g), or (h) may be fined not more than $500 for each such failure." *Id.* § 110(*l*)(1). In addition, it states:

(2) The court shall triple the amount of a fine assessed under paragraph (1) in any case in which the court finds that a bankruptcy petition preparer--
. . .
(D) prepared a document for filing in a manner that failed to disclose the identity of the bankruptcy petition preparer.
(3) A debtor, trustee, creditor, or United States trustee . . . may file a motion for an order imposing a fine on the bankruptcy petition preparer for any violation of this section.
(4) (A) Fines imposed under this subsection in judicial districts served by United States trustees shall be paid to the United States trustees, who shall deposit an amount equal to such fines in the United States Trustee Fund.

*Id.* § 110(*l*)(2)-(4). The court will consider damages under section 110(*l*).

Section 110(*l*)(1) permits the court to assess damages, in the amount of a $500 fine per violation, when a defendant fails to comply with subsections (b), (c), (d), (e), (f), (g), or (h) of section 110. Furthermore, section 110(*l*)(2)(D) provides that the court "shall triple the amount of a fine assessed under paragraph (1) in any case in which the court finds that a bankruptcy petition preparer . . . prepare[s] a document for filing in a manner that failed to disclose the identity of the bankruptcy petition preparer." *Id.* § 110(*l*)(2)(D). "Fines imposed under this

subsection in judicial districts served by United States trustees shall be paid to the United States trustees, who shall deposit an amount equal to such fines in the United States Trustee Fund." *Id.* § 110(*l*)(4)(A).

As set forth above, the testimony in the Bogan Proceeding established that the Defendant violated sections 110(b),[22] (d), (e) and (g) in the context of Ms. Bogan's bankruptcy case. The appropriate fine for a violation of section 110(*l*)(1) is $500 per violation. Furthermore, the court must triple a portion of the fine under section 110(*l*)(2) since the Defendant failed to disclose his identity in preparing Ms. Bogan's application to waive the filing fee. In this instance, the Defendant once violated section 110 (g) and twice violated section 110(e)—once by providing advice as to exemptions and once by preparing an application to waive the filing fee; furthermore, one of the Defendant's two section 110(e) violations involved the Defendant's failure to disclose his identity and thus results in a triple fine. The Defendant shall be fined $500 each his violation of section (g) and for his first violation of section 110(e) and $1,500 for his second violation of section 110(e) for a total fine of $2,500 pursuant to Counts Three and Five of the Bogan complaint.

As for the fines requested under section 110(d) in the Bogan Proceeding, the court is not convinced that the Defendant had proper notice of the exact nature of the fines requested. More specifically, the complaint in the Bogan Proceeding requests separate $500 fines for failing to provide Ms. Bogan with "a separate copy of the Petition, Statement of Social Security Number, Disclosure, Declaration, Application, Payment Advices, Statement of Current Monthly Income and Disposable Income Calculation, Certificate of Budget and Credit Counseling Schedules" at or prior to the time Ms. Bogan signed those documents. While the court found Ms. Bogan's testimony that she did not receive any documents until a week after she signed them credible, the court cannot grant sanctions for these counts at this time since the complaint lacks specificity, for example when it refers to a "Declaration" since there are multiple documents that contain the word "Declaration" in their captions. Furthermore, the complaint in the Bogan Proceeding and the supplemental submission regarding damages in that case, Doc. No, 19 in the Bogan Proceeding, both request ten separate fines for failure to provide documents but the court notes only nine documents listed in the complaint. As such, the court cannot award damages under section 110(d) at this time. The court will consider an amended request for sanctions made via properly pled and served motions with specifically delineated requests for sanctions and certifications as to the amounts due.

Accordingly, the plaintiff has established the elements necessary for entry of judgment on Count Four of the Bogan Proceeding. The Defendant is directed to pay a total of $2,500 to the Office of the United States Trustee in connection with the Bogan Proceeding.

As set forth above, the testimony in the Vara Proceeding established that the Defendant violated sections 110(b), (c), and (e) in the context of Ms. Jamison's bankruptcy case. The

---

[22] The complaint in the Bogan Proceeding did not request a section 110(*l*) fine for the Defendant's violation of section 110(b) so such a fine cannot be assessed. 11 U.S.C. § 110(*l*)(3) ("A debtor, trustee, creditor, or United States trustee . . . may file a motion for an order imposing a fine on the bankruptcy petition preparer for any violation of this section.").

appropriate fine for a violation of section 110(*l*)(1) is $500 per violation. Furthermore, the court must triple each portion of the fine under section 110(*l*)(2) since the Defendant failed to disclose his identity in preparing Ms. Jamison's motion to reopen and the related certificate of service. Since the Defendant violated sections 110(b), (c) and (e) two times each, once while preparing the motion to reopen and once while preparing the related certificate of service, and since the Defendant failed to disclose his identity in each instance, the Defendant shall be fined a $500 for each of the six infractions and each of those fines shall be tripled for a total fine of $9,000 pursuant to Counts Two, Three, and Four of the Vara complaint.

As set forth above, the testimony in the Hill Proceeding established that the Defendant violated sections 110(b)[23] and (e) in the context of Mr. Hill's bankruptcy case.[24] The appropriate fine for a violation of section 110(*l*)(1) is $500 per violation. Furthermore, the court must triple a portion of the fine under section 110(*l*)(2) since the Defendant failed to disclose his identity in preparing Mr. Hill's application to pay the filing fee in installments. In this instance, the Defendant twice violated section 110(e), once by providing advice as to exemptions and filing out Mr. Hill's exemptions for him and once by preparing an application to pay the filing fee in installments. This second violation involved the Defendant's failure to disclose his identity and thus results in a triple fine. The Defendant shall be fined $500 for his first violation of section 110(e) and $1,500 for his second violation of section 110(e) for a total fine of $2,000 in connection with the Hill Proceeding. The Defendant is directed to pay a total of $2,000 to the Office of the United States Trustee pursuant to Count Two of the Hill complaint.

---

[23] The Hill Proceeding did not request a section 110(*l*) fine for the Defendant's violation of section 110(b) so such a fine cannot be assessed. 11 U.S.C. § 110(*l*)(3) ("A debtor, trustee, creditor, or United States trustee . . . may file a motion for an order imposing a fine on the bankruptcy petition preparer for any violation of this section.")).

[24] The post-trial brief and supplemental submission regarding damages in the Hill Proceeding indicate that a section 110(*l*) fine is in order for the Defendant's violations of sections 110(d) and (g) in connection with the Hill Proceeding, however the complaint in the Hill Proceeding did not seek relief for violations of sections 110(d) and (g) and as such the court cannot consider imposing a section 110(*l*) fine for such violations. *See* Doc. Nos. 1, 18, 19 in the Hill Proceeding.

## VI.     CONCLUSION

As set forth above, judgment shall be and hereby is granted as to all five counts of the Vara Proceeding, all six counts of the Bogan Proceeding, and all three counts of the Hill Proceeding. The Defendant shall be and hereby is enjoined from directly or indirectly acting as a bankruptcy petition preparer in this jurisdiction pursuant to section 110(j).

In accordance with the findings above, the Defendant is obligated to pay:

1.  Pursuant to section 110(l), $2,500 payable to the Office of the United States Trustee in connection with the Bogan Proceeding;

2.  Pursuant to section 110(h), $300 payable to Ms. Bogan and mailed to Joseph Marchand, Esquire;

3.  Pursuant to section 110(j), $2,500 payable to Ms. Bogan for legal fees accrued in the prosecution of the Bogan Proceeding;

4.  Pursuant to section 110(l), $9,000 payable to the Office of the United States Trustee in connection with the Vara Proceeding;

5.  Pursuant to section 110(i), $2,000 payable to Ms. Jamison and mailed to the Office of the United States Trustee;

6.  Pursuant to section 110(h), $250 payable to Ms. Jamison and mailed to Brian Thomas, Esquire;

7.  Pursuant to section 110(l), $2,000 payable to the Office of the United States Trustee in connection with the Hill Proceeding; and

8.  Pursuant to section 110(h), $150 payable to Mr. Hill and mailed to Douglas Stanger, Esquire.

The court will consider an amended request for sanctions under section 110(d) in the Bogan Proceeding made via properly pled and served motions with specifically delineated requests for sanctions and certifications as to the amounts due.

Counsel for Ms. Bogan and Mr. Hill and the Office of the United States Trustee are directed to submit separate forms of order consistent with the court's findings in each of the Proceedings.

The court reserves the right to revise its findings of fact and conclusions of law.


/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge

Dated: September 18, 2015

## APPENDIX A - SERVICE ON DEFENDANT

With regard to service on the Defendant, the court notes following facts:

1.      The Defendant has listed his address as 16 Clarke Road, Bridgeton, New Jersey 08302 in numerous documents filed with the court. More specifically:

   a.   The Defendant identified himself as a bankruptcy petition preparer on a Certification of [Non-Attorney] Bankruptcy Petition Preparer B201B (Form 201B) in Kenisha T. Jamison's bankruptcy case, and he provided his social security number, signed his name on the certification, and identified his address as 16 Clarke Road, Bridgeton, New Jersey 08302 on the petition in that case. Doc. No. 1 in Case No. 14-24880 at 58.

   b.   More recently, on an unrelated petition filed with this court on May 11, 2015, the Defendant identified himself as a bankruptcy petition preparer as part of a Declaration and Signature of Non-Attorney Bankruptcy Petition Preparer with the same social security number as appears in the petitions at issue in these Proceedings, and he signed the certification and identified his address as 16 Clarke Road, Bridgeton, New Jersey 08302 in connection therewith. Doc. No. 1 in Case No. 15-18806 at 44.

   c.   Between February 13, 2015 (after the Bogan Proceeding was filed but before the Vara and Hill Proceedings were filed) and May 28, 2015, the Defendant has been listed as a bankruptcy petition preparer in as many as ten (10) additional cases filed with this court and has provided the same social security number and identified his address as 16 Clarke Road, Bridgeton, New Jersey 08302 each time.

2.      With regard to the Vara Proceeding, the court notes as follows:

   a.   The complaint in the Vara Proceeding was properly served on the Defendant at 16 Clarke Road, Bridgeton, New Jersey 08302. Doc. No. 3 in the Vara Proceeding.

   b.   On or about March 27, 2015, a default was entered in the Vara Proceeding and notice thereof was sent to the Defendant at 16 Clark Road, Bridgeton, New Jersey 08302. Doc. Nos. 5 and 6 in the Vara Proceeding. The Defendant took no action in response.

   c.   An April 7, 2015 letter from the Office of the United States Trustee requested that the Vara Proceeding be joined with the Bogan Proceeding for the sake of a proof hearing on May 7, 2015. Doc. No. 7 in the Vara Proceeding. This letter went out on notice to the Defendant at 16 Clark Road, Bridgeton, New Jersey 08302. Doc. No. 9 in the Vara Proceeding. The court also sent out a notice of proof hearing to the Defendant at 16

Clark Road, Bridgeton, New Jersey 08302. Doc. Nos. 8 and 10 in the Vara Proceeding. The May 7, 2015 proof hearing was subsequently adjourned. *See* May 7, 2015 minute on the Docket in the Vara Proceeding.

d. On May 26, 2015, the Office of the United States Trustee filed a certificate of service indicating that it sent the Defendant a letter documenting the adjournment of the proof hearing in the Vara and Bogan Proceedings to May 28, 2015. Doc. No. 11 in the Vara Proceeding. The Defendant was served at 16 Clark Road, Bridgeton, New Jersey 08302. *Id.* While the letter in question was not filed directly in the Vara Proceeding, it does appear as an exhibit to Doc. No. 12 in the Vara Proceeding, discussed below. Doc. No. 12 in the Vara Proceeding.

e. On May 27, 2015, Tina Oppelt, a paralegal with the Office of the United States Trustee, filed a declaration documenting her numerous attempts to serve the Defendant at 16 Clarke Road, Bridgeton, New Jersey 08302 and providing four Federal Express receipts as exhibits thereof. Doc. No. 12 in the Vara Proceeding. Two of the Federal Express receipts indicate that packages were signed for by a "T. Gillis" with a signature closely resembling the Defendant's signature, one indicates it was signed for by an "E. Gillis" with a signature closely resembling the Defendant's signature, and one was signed for my an "M. Thompkins" with a signature that does not resemble the Defendant's signature. *Id.* In her declaration, Ms. Oppelt indicated that the Defendant did not respond to any of the packages she sent him. *Id.*

3. Similarly, with regard to the Bogan Proceeding, the court notes as follows:

a. The Defendant listed his address as 16 Clarke Road, Bridgeton, New Jersey 08302 in numerous documents filed with the court in connection with Ms. Bogan's bankruptcy. *See* Doc. No. 1 in Case No. 14-13948 at 3.

b. The complaint in the Bogan Proceeding was properly served on the Defendant at 16 Clarke Road, Bridgeton, New Jersey 08302. Doc. No. 3 in the Bogan Proceeding.

c. The entry of default in the Bogan Proceeding was also properly served on the Defendant at 16 Clarke Road, Bridgeton, New Jersey 08302. Doc. Nos. 6 and 7 in the Bogan Proceeding. Again the Defendant took no steps to set aside the default.

d. The Defendant was provided with notice of a March 5, 2015 proof hearing at 16 Clarke Road, Bridgeton, New Jersey 08302. Doc. Nos. 9 and 10 in the Bogan Proceeding.

    e.   An April 7, 2015 the same letter from the Office of the United States Trustee that was filed in the Vara Proceeding was filed in the Bogan Proceeding, scheduling a joint proof hearing on May 7, 2015. Doc. No. 11 in the Bogan Proceeding. The court sent notice to the Defendant of same at 16 Clarke Road, Bridgeton, New Jersey 08302. Doc. Nos. 12 and 13 in the Bogan Proceeding.

    f.   A May 14, 2015 letter from Mr. Herron advised the Defendant that the proof hearing had been rescheduled for May 28, 2015 and was served on the Defendant at 16 Clarke Road, Bridgeton, New Jersey 08302. Doc. No. 15 in the Bogan Proceeding.

4.       Finally, with regard to the Hill Proceeding, the court notes as follows:

    a.   The Defendant listed his address as 16 Clarke Road, Bridgeton, New Jersey 08302 in numerous documents filed with the court in connection with Mr. Hill's bankruptcy. *See* Doc. No. 1 in Case No. 14-19863 at 3.

    b.   The complaint in the Hill Proceeding was properly served on the Defendant at 16 Clarke Road, Bridgeton, New Jersey 08302. Doc. No. 3 in the Hill Proceeding.

    c.   The entry of default in the Bogan Proceeding was also properly served on the Defendant at 16 Clarke Road, Bridgeton, New Jersey 08302. Doc. Nos. 10 and 12 in the Bogan Proceeding. Again the Defendant took no steps to set aside the default.

    d.   The Defendant was provided with notice of a May 28, 2015 proof hearing at 16 Clarke Road, Bridgeton, New Jersey 08302. Doc. Nos. 11, 13, and 14 in the Bogan Proceeding.